ROBERT A. CHAISSON, Judge.
LThis is an appeal by Carla Morelon Quainoo from a judgment denying her permission to relocate her two minor children from Jefferson Parish to Decatur, Georgia. For the following reasons, the judgment is reversed, Carla Morelon Quainoo is hereby authorized to relocate the children as requested in her petition, and the matter is remanded to the district court for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
Carla Morelon was studying for her Ph.D. at Indiana University when she met Daniel Quainoo. Mr. Quainoo, then a citizen of Ghana, was employed by the university as an assistant residence manager. He has a master’s degree in student personnel administration. They were married in Indiana in 2006, and shortly thereafter Mrs. Quainoo finished her degree and got a job at Dillard University in New Orleans. In part through Mrs. Quainoo’s help, Mr. Quainoo was also hired by Dillard as dean of residential life and campus life. The couple bought a home in Jefferson Parish. They then had two children: a son, Daniel, Jr., born on July 9, |s2007, and a daughter, Shila, born on July 30, 2009. During this period, Mr. Quainoo became a U.S. citizen. Neither parent has any historic affiliation with the New Orleans metropolitan area, nor has any family there.
In September of 2008, Mr. Quainoo lost his job at Dillard, where his salary was $48,500 per year. During the following *365 year, he drew unemployment benefits and applied for numerous jobs in other states, but without success. Shortly before his unemployment benefits ran out, he took a job as a janitor with Sunrise Assisted Living, an elderly care facility company with operations in other states. His salary there is $9.50 per hour. During this period, Mrs. Quainoo took a second job working part-time to help with the couple’s finances.
In 2010, Mrs. Quainoo began receiving information that her $76,000 salary at Dillard might be cut by 10% due to financial constraints at the school. She also testified that after Mr. Quainoo was terminated, her workplace became somewhat uncomfortable for her. She too began looking for a job elsewhere, and Mr. Quainoo was aware of this search. In November of 2010, she was offered a job as coordinator of training and research with the Southern Association of Universities and Schools (SACS)[1] in Atlanta, Georgia, with a salary increase of $11,000. She testified that this position was not only more secure than her job at Dillard, but that it was a career move which could open the way for consideration for positions as president, vice-president or chancellor of universities and colleges. She further testified that she had worked at Emory University in Atlanta for eight years, and had friends in the area. Additionally, her sister Yvette, a school social worker, also lives near Atlanta and has a very close relationship with the children. Considering |4all of these factors, she accepted the job in November of 2010. She informed Mr. Quainoo about this development and his comment was “congratulations.”
It was her initial impression that Mr. Quainoo would move to Atlanta with her and the children. He had in fact earlier applied, albeit unsuccessfully, for a job at Emory University in Atlanta, and she took this as an indication that he would move there if he had the opportunity. However, he informed her in late November that he had no intention of moving with her. At about that time, Mrs. Quainoo traveled to Georgia to look for an apartment, and Mr. Quainoo was aware of this. When she returned to Jefferson Parish, she began to prepare for the move. On December 7, after Mr. Quainoo left for work, she left with the children and her furniture for Decatur, a city near Atlanta where she had found a convenient apartment. Mr. Quai-noo did not learn that she had left with the children until he returned home from work.
Mrs. Quainoo testified that she assumed that Mr. Quainoo would eventually change his mind and follow her and the children to Atlanta. Instead, he filed a petition in Jefferson Parish seeking return of the children, and for divorce. The children were duly returned, and Mrs. Quainoo then filed a petition to relocate the children.
During the relocation proceedings, the trial judge appointed J. Stephen York, Ph. D., as a mental health professional to complete a custody and relocation evaluation. Over the course of six weeks, Dr. York interviewed each parent three times and administered the Minnesota Multiphasic Personality Inventory-2 test to both of them. He also observed both parents independently with the children. Other information which he considered related to the parents’ education and work histories, comparisons of schools and services in the *366 Atlanta versus New Orleans |sareas, various records relating to the children, and other applicable data. His pertinent observations were as follows:
Carla Quainoo has been offered and accepted a promotion in Georgia. It offers her a significant increase in salary as well as job security and prestige in her field of expertise. She has leased an appropriate home in an area with good schools and excellent recreational opportunities. Mr. Quainoo has a job as a janitor in which he is underemployed compared to his education and background, yet he does not want the children to move. He specifically said he did not want a more demanding [job].
Dr. York also noted that Mrs. Quainoo’s sister Yvette, had offered Mr. Quainoo a place to stay in the Atlanta area, and Mrs. Quainoo had contacted the Atlanta office of Sunrise Assisted Living and determined that there were jobs available there. He also pointed out that there are numerous universities and colleges in the Atlanta area which might offer opportunities in both parents’ fields. In regard to Mr. Quainoo’s position on his moving to Atlanta, he said: “Mr. Quainoo has decided he does not want to leave Louisiana. There is no feasible explanation for this. If he is going to work as a janitor, I am sure he could find such work in Atlanta or one of its suburbs. Factually, he could choose to move, and Mrs. Quainoo found the company for whom he works now has jobs in the Atlanta area.”
He reviewed the twelve criteria of La. R.S. 9:355.12 and found that both parties have been good, responsible and loving parents who met their obligations to the children. He acknowledged that by its very nature, relocation presents problems for visitation by the non-locating parent, but deemed these problems at least amel-iorable by reasonable visitation arrangements and modern means of communication. His overall view was that the move would be advantageous to the mother in her career, and also to the children as to schools. His conclusion was that allowing the relocation would be best for the children.
| (¡During the April 25, 2011, relocation hearing, Mrs. Quainoo’s sister Yvette testified to her close relationship with the children and her availability to help out with them. She also corroborated Dr. York’s finding that she had offered Mr. Quainoo a room in her house while he got settled in Georgia.
Mr. Quainoo testified in opposition to the relocation. The thrust of his testimony was that he felt himself to be a very good parent. This was borne out by all of the evidence presented. He stated that he had developed close friendships in his Catholic Church community, and that these people were more than willing to help with the children. Several of these friends corroborated this information. He admitted to applying for almost 100 jobs, some in other states, after he was terminated at Dillard, and one of which was at Emory University in Atlanta, thus exhibiting a willingness to at least consider moving. However, when asked if he would consider transferring within his employer’s company in Atlanta he responded, “I have no intention of transferring for my company because that is not what I want to do.”
At the end of the hearing, the trial judge denied the petition for relocation. This appeal followed.
LAW AND ANALYSIS
In Gathen v. Gathen, 2010-2312 (La.5/10/11), 66 So.3d 1, the Supreme Court explained that in relocation cases, La. R.S. 9:355.12 provides that the relocating parent has the burden of proving that the relocation is 1) made in good faith, and 2) in the best interest of the child. The *367 statute further requires the court to consider the benefits which the child will receive either directly or indirectly from an enhancement in the relocating parent’s general quality of life. In discussing this burden, the Court noted that the legislature has decided to place the entire burden of proof on the relocating parent, and to place no burden on the 17nonrelocating parent, and it further described this burden as a “very heavy burden.” While the Court did not further elaborate on the meaning of the term “very heavy burden,” it is apparent that this expression simply refers to the fact that the entire burden falls to the relocating parent to prove that relocation is in the best interest of the child, while the other parent need not put on evidence to show that it is not. We therefore do not construe it as establishing a burden beyond the normal civil standard of “preponderance of the evidence.” See Gathen, Knoll, J, dissenting, at 13-14. The Court also held that the proper standard of review in relocation cases is whether the trial judge abused his discretion in approving or disapproving of the relocation. It further noted that the trial judge could place more emphasis on some of the twelve criteria set forth in La. R.S. 9:355.12, and that the failure to analyze each factor individually did not constitute legal error requiring de novo review.
In the present case, the trial judge did in fact touch on all twelve factors in his reasons for judgment. He found some of the factors inapplicable, others having equal weight for or against relocation, and several as strongly pointing against relocation.
Factor 1. The Nature of the Children’s Relationship with Both Parents. The trial judge deemed this of little weight for or against relocation because the children have strong ties to both parents.
Factor 2. The Impact that the Move Would Have on the Children’s Emotional, Educational and Physical Development. He deemed this factor to weigh against the move. The evidence bearing on this point was that the children, and especially Daniel, Jr., were confused while in Georgia about where their father was and why they could not see him.
Factor 3. The Feasibility of Preserving Good Relationships between the Nonrelo-cating Parent and the Children through Visitation, Considering the | ^Logistics and Financial Situation of the Parents. The trial judge concluded that this factor weighed against relocation because Mr. Quainoo would have difficulty in travelling to Georgia. He further speculated that Mr. Quainoo would have to stay in a “hotel or something like that” to exercise visitation. He found that this factor weighed strongly against relocation.
Factor 4. The Preferences of the Children. The trial judge determined this factor not to be applicable given the children’s ages of one and three years.
Factor 5. Whether the Relocating Parent Had Established a Pattern of Promoting or Hindering the Other Parent from Having a Relationship with the Children. The trial judge found that this factor was neutral on the issue of relocation.
Factor 6. Whether the Relocation Would Enhance the General Quality of Life for the Relocating Parent and the Children. On this point, the trial judge concluded that Mrs. Quainoo’s quality of life would be marginally enhanced, and did not consider an $11,000 (or 15%) increase in salary to be particularly significant.
Factor 7. The Reasons of Each Parent for Seeking or Opposing Relocation. On this point the trial judge stated that he did not deem the reasons given by Mrs. Quai-noo to be sufficient to justify breaking up *368 the home, while Mr. Quainoo’s roots in the community and his strong interactions with the children weighed against relocation.
Factor 8. The Economic Situation of the Parties and Whether the Relocation Would Improve the Circumstances of the Parent Seeking Relocation. On this point, the trial judge found that Mrs. Quainoo’s situation would be improved somewhat, and that this improvement weighed in favor of relocation.
| aFactor 9. The Extent to Which the Objecting Parent Had Fulfilled His Financial Obligations. The trial judge found that Mr. Quainoo had fulfilled these obligations and that this factor did not weigh one way or the other.
Factor 10. The Feasibility of the Objecting Parent Relocating. On this point, the trial judge found that the feasibility of the objecting parent to relocate was low and improbable. He also elaborated on the fact of Mrs. Quainoo’s secretive move with the children as having created such a level of distrust on the part of Mr. Quainoo so as to make him unwilling to move to be near his family.
Factor 11, relating to drug or physical abuse, and factor 12, relating to any other factors concerning the best interest of the child, were found by the trial judge not to be applicable here.
The trial judge also cited La. R.S. 9:355.6, which provides that failure to give notice of a proposed relocation may be considered in any decision regarding relocation.[2]
In reviewing the totality of the trial judge’s reasons for judgment, it is evident that he deemed the fact that Mrs. Quainoo had taken the children to Decatur, Georgia, without Mr. Quainoo’s permission to be a significant factor in his decision. He viewed this act as undermining any opportunity for the marriage to survive. It is equally clear that in his analysis of Mr. Quainoo’s ability to see the children under a visitation regime and the feasibility of the father relocating, he analyzed the problems from Mr. Quainoo’s perspective, as much as from that of the best interest of the children.
There are a number of problems in the above analysis. While we certainly do not condone the manner in which Mrs. Quai-noo chose to leave, for the trial | 10judge to place undue emphasis on it when the relocation is otherwise clearly in the best interest of the children, would serve to penalize the children as much as it would Mrs. Quainoo. The role of a parent is not only to love and nurture their children, but also to provide for their basic needs. The more financially secure the parents are, the better they are able to provide for their children’s needs. Mr. Quainoo has a master’s degree and earned $48,500 per year working in his field. After losing his job in 2008 and collecting unemployment for over a year, he found employment as a janitor with Sunrise Assisted Living. He is currently a care manager for Sunrise and earns $18,000 per year. Unfortunately for Mr. Quainoo and his family, since 2008, he has been dramatically underemployed in relation to his career potential. Mr. Quainoo indicated to Dr. York that he did not want a more demanding job, the unmistakable inference being that he is satisfied with his job and salary. Whether *369 or not his underemployment is due to any fault on his part or is completely beyond his control is of no moment; it is simply the experience that he has had.
Fortunately for the Quainoos and their children, Mrs. Quainoo has had the opposite experience with her career. Not only has she maintained employment in the field of her education and expertise, but she now has the opportunity for significant career advancement to a more secure job with a 15% pay increase. This opportunity to enhance the financial security of the Quainoo children becomes even more pronounced in light of the unfortunate career limitations that Mr. Quainoo has experienced since 2008. Mrs. Quainoo told Mr. Quainoo about accepting the Georgia job, and he knew that she had gone to Atlanta to look for housing. Although she departed abruptly with the children, it apparently came as no surprise to Mr. Quainoo that she wanted to move the children to Georgia. It was shown that she had lived in Atlanta for eight years, had personal contacts | n there, and a sister living nearby who enjoyed close bonds with the children and was willing to help out whenever needed. Dr. York reported that his review of Mrs. Quainoo’s total situation, as well as the emotional, educational and recreational opportunities resulting from the move, indicated that the relocation would be in the children’s best interest. Moreover, Mrs. Quainoo undertook to look into the job market in Atlanta for Mr. Quainoo’s benefit, and her sister offered assistance with lodging. It was Mrs. Quainoo’s expectation that he would soon follow them to Atlanta, and she tried to make his move as easy as possible. While the manner in which Mrs. Quainoo chose to move the children was certainly inappropriate, it is clear that the move itself, and the resulting enhanced financial benefits to the Quainoo family, especially in light of Mr. Quainoo’s inability or unwillingness to provide financial resources to his family commensurate with his abilities, is in the best interest of the children.
The trial judge also made several findings concerning the feasibility of Mr. Quai-noo relocating to Georgia and concluded that his relocation was not feasible. We find that this conclusion is contradicted by a number of evidentiary factors relating to Mr. Quainoo. The evidence shows that he has no historical ties to Louisiana or Jefferson Parish, and has lived in a number of places in his lifetime. He was born and raised in Ghana, attended universities in California and Illinois, and was employed at Indiana University, where he met Mrs. Quainoo and moved to Jefferson Parish in 2006. He has thus exhibited the ability to adapt well to relocation. When he lost his job at Dillard, he applied for positions outside of the New Orleans metropolitan area, including one in Atlanta, indicating a willingness to consider work elsewhere. It was shown that there are job opportunities with his company in the Atlanta area, and his sister-in-law offered him temporary housing until he could obtain permanent housing.
| ijWhen asked at the hearing whether he would be willing to take a job with his company in Atlanta, he said that he simply did not want to move. His apparent reason was that he has made friends with neighbors and church members. When presented with all of the above evidence, Dr. York concluded that “Mr. Quainoo has decided he does not want to leave Louisiana. There is no feasible explanation for this.” It is apparent that based upon Mr. Quainoo’s expressed lack of a willingness to move, the trial judge concluded that such a move was not feasible. We find this conclusion to be in error. Mr. Quai-noo is perfectly capable of moving to Georgia but simply does not wish to move because of his social contacts in the New Orleans area. To deny the relocation of *370 the children places Mrs. Quainoo in the position of having to choose between her career advancement and the resulting enhanced financial security of her children, or having to forego that opportunity in order to live in the same state as her children so that Mr. Quainoo can maintain his social contacts.
Finally, the trial judge noted that if Mr. Quainoo wished to see the children in Georgia he would possibly have to do so in a hotel. This idea presupposes that no visitation decree could be confected which would allow Mr. Quainoo to have physical custody for significant periods of time at his home in Jefferson Parish. This is simply not a reasonable supposition.
Considering all of the above evidence, it is this Court’s opinion that the trial judge abused his discretion in denying the relocation of the children. What the record unequivocally shows is that the only impediment to the relocation is Mr. Quainoo’s obstinate refusal to agree to it. If he insists on continuing with his present Jefferson Parish position, in which he is significantly underemployed, that is his choice, but that does not provide any reasonable basis for him to oppose the relocation of his children. While admittedly relocation will create some hardships |1sfor both parents in regards to visitation, those problems can in large part be ameliorated by a well-crafted custody, visitation, and child support regime.
For the foregoing reasons, the judgment denying Mrs. Quainoo permission to relocate the children is set aside, judgment is hereby entered permitting the relocation of the children, and the matter is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED

. SACS is one of six national institutions recognized by the U.S. Department of Education and the Council for Higher Education Accreditation as the accrediting agency for universities, colleges and schools. SACS operates in the southeastern United States in seven states, and also in Mexico and the Caribbean in schools for U.S. students.

. It is not at all clear to this Court that the relocation statutes. La. R.S. 9:355.1, et seq., require a parent to obtain court authorization to relocate children when the parents are still married and there is no divorce or custody proceeding pending, nor any custody orders issued by a court. Only upon the divorce proceeding being initiated by Mr. Quainoo did those statutes become applicable.